# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES KELLY TUBBS,<br>TAMMY LYNN TUBBS,<br><br>    Plaintiffs,<br><br>vs.<br><br>JEREMY HARRISON,<br>LT. TIMOTHY MUNZY,<br>THE CITY OF OKLAHOMA CITY,<br>a political subdivision of the State of<br>Oklahoma,<br><br>    Defendants. | Case No. CIV-07-1286-M |

## ORDER

This case is scheduled for trial on the Court's August 2009 trial docket.

Before the Court is defendant the City of Oklahoma City's ("City") Motion for Summary Judgment, filed June 11, 2009. On June 29, 2009, plaintiffs filed their response, and on July 7, 2009, the City filed its reply. Based upon the parties' submissions, the Court makes its determination.

I. Introduction

On March 9, 2005, the Oklahoma City Police Department received an anonymous tip of drug activity at plaintiffs' residence, and on April 18, 2005, the Oklahoma City Police Department received an anonymous tip that plaintiff James Kelly Tubbs ("Mr. Tubbs") was dealing drugs. On December 15, 2005, Oklahoma City police officers Jeremy Harrison ("Harrison") and Lt. Timothy Muzny ("Muzny") went to plaintiffs' house to do a knock and talk, to learn more about the possibility of drug activity. Two other police officers were present but did not go to the front door.

Harrison knocked on the door, and Mr. Tubbs answered. Harrison asked to come inside to talk to Mr. Tubbs. Mr. Tubbs refused and indicated that he wanted to get his wife for witness

purposes. According to Harrison and Muzny, at some point while they were talking to Mr. Tubbs, they smelled marijuana; plaintiffs, however, dispute that Harrison and Muzny could smell marijuana. After allegedly smelling marijuana, Harrison and Muzny entered plaintiffs' house based upon what they believed were exigent circumstances. Harrison and Muzny handcuffed Mr. Tubbs, and according to plaintiffs forced Mr. Tubbs to the ground. Plaintiff Tammy Lynn Tubbs ("Mrs. Tubbs") entered the living room and was ordered to "shut up" and sit down.

At about this time, the two remaining officers entered the house. The officers performed what they state was a protective sweep. It is disputed exactly what was found during this sweep, but at least some marijuana was found. After the "protective sweep," Harrison and/or Muzny asked Mr. Tubbs to consent to a search of the residence. According to plaintiffs, Mr. Tubbs initially declined to consent but eventually did consent only after the officers agreed not to charge Mrs. Tubbs. The officers conducted a further search of the residence and eventually arrested both Mr. and Mrs. Tubbs.

The charges against plaintiffs were ultimately dismissed after the state court granted plaintiffs' motion to suppress. Plaintiffs then brought the instant action against Harrison, Muzny, and the City, claiming that the entry into their house violated their constitutional rights and led to an unlawful search of their home and unlawful seizures and arrests of their person, and that the policies and training of the City caused some of the constitutional violations taken by the officers. The City now moves this Court for summary judgment on all claims asserted against it.[1]

---

[1] In its motion for summary judgment, the City moved for summary judgment regarding any claims of improper training on probable cause for arrest, improper training on use of force, unlawful policies and procedures on probable cause to arrest, unlawful policies and procedures on use of force, lack of supervision, and ratification. In their response, plaintiffs do not address any of these claims. Accordingly, to the extent that plaintiffs are asserting the above claims, the Court finds that

2

II.    Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

    A.    Failure to train

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Further,

---

the City is entitled to summary judgment regarding these claims.

3

> [i]n resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 390-91 (internal citations omitted).

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiffs and viewing all reasonable inferences in plaintiffs' favor, the Court finds plaintiffs have not presented any evidence that the City's training on search and seizure, and specifically on exigent circumstances and consent, was inadequate. In fact, a review of the City's training material reveals that the City does, in fact, specifically train its police officers on the Tenth Circuit's requirements for conducting a warrantless search based upon exigent circumstances and on the requirement that an individual's consent must be voluntary and what voluntary means. Further, the Court finds plaintiffs' sole basis for establishing the City's liability in this case is that Harrison was unsatisfactorily trained on exigent circumstances and Muzny was unsatisfactorily trained on consent. The United States Supreme Court has held that this alone is not sufficient to fasten liability on a municipality. Accordingly, the Court finds that the City is entitled to summary judgment on plaintiffs' failure to train claim.

B.  Policies and procedures

Plaintiffs assert that the City did not have an adequate policy in place regarding the exigent circumstances exception to the search warrant rule. In *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), the United States Supreme Court held that a municipality could be liable for civil rights violations if its written policies were unconstitutional and if these policies caused the event. *Id.* at 690. The Supreme Court further held that the alleged policies must be the "moving force" behind the alleged constitutional violation. *Id.* at 691.

Oklahoma City Police Department Procedure 190.0 provides that search warrant procedures are to be followed unless there are exigent circumstances. *See* OCPD Procedure 190.0 attached as Exhibit 28 to the City's Motion for Summary Judgment. Plaintiffs assert that this procedure is inadequate because it does not specifically set forth the Tenth Circuit's four requirements for a warrantless search based upon the exigent circumstance of imminent destruction of evidence.

Having carefully reviewed the parties' submissions, the Court finds that plaintiffs have failed to show that the failure to set forth the Tenth Circuit's requirements was the "moving force" behind the alleged constitutional violations. Specifically, the Court finds that plaintiffs have presented no evidence to show that this failure caused the alleged constitutional deprivations. Accordingly, the Court finds that the City is entitled to summary judgment on plaintiffs' inadequate policies and procedures claim.

IV.     Conclusion

For the reasons set forth above, the Court GRANTS the City's Motion for Summary Judgment [docket no. 54].

**IT IS SO ORDERED this 23rd day of July, 2009.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE